UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAY CLARENCE ROGERS,

Plaintiff,

v.

EDWARD NORMAN et al.,

Defendants.

CASE NO. 2:24-cv-01465-LK-MLP

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION

This matter comes before the Court on the Report and Recommendation ("R&R") of United States Magistrate Judge Michelle L. Peterson, Dkt. No. 58, regarding the King County Defendants' motion to dismiss, Dkt. No. 38. Having reviewed the R&R, Rogers' objections, Dkt. No. 62, King County Defendants' response, Dkt. No. 63, and the balance of the record, the Court adopts in part and modifies in part the R&R as set forth below.

## I. BACKGROUND

The background and procedural history are set forth in the R&R and will not be restated here except as necessary to rule on the issues before the Court. *See* Dkt. No. 58 at 2–5. Rogers, who is currently in pretrial detention at the Airway Heights Corrections Center, brought suit under

42 U.S.C. § 1983 against King County and a number of employees of the King County Department of Adult and Juvenile Detention ("DAJD"), as well as the King County Correctional Facility ("KCCF"), where he was confined before he was moved to the Maleng Regional Justice Center and then Airway Heights. *See id.* at 1–3; Dkt. No. 16 at 4–7, 10; Dkt. No. 73.

Rogers alleged that Defendants violated his First Amendment rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by failing to provide meals that conformed to the requirements of his religion, the House of Yahweh. Dkt. No. 16 at 12–25; *see also* Dkt. No. 58 at 3.[1] Rogers further alleged that Defendants violated his First, Sixth, and Fourteenth Amendment rights to private legal communications through a policy of opening a prisoner's legal mail in front of him, photocopying it, providing the prisoner the photocopy, and shredding the original. Dkt. No. 16 at 26–37; *see also* Dkt. No. 58 at 4. Rogers averred that mailroom staff can read the documents during the scanning process and that the scanning device has memory storage capabilities allowing legal correspondence to be accessed outside Rogers' presence. Dkt. No. 16 at 30–31; *see also* Dkt. No. 58 at 14.[2] Finally, Rogers alleged that his rights under the First, Sixth, and Fourteenth Amendments were violated by "a policy that 'prohibits/restricts photocopy services from being made available to pretrial detainees,' and thereby infringes on his right of meaningful access to the courts." Dkt. No. 58 at 4 (quoting Dkt. No. 16 at 41); *see also* Dkt. No. 16 at 38–47.[3]

Defendants King County, Andrea Williams, Michael Taylor, Troy Bacon, Allen Nance, Gregg Curtis, Janae Shepherd-Moses, Amber Robbins, Michael Vernon, and Edward Norman

---

[1] Rogers' kosher diet commenced on May 22, 2024. Dkt. No. 16 at 13.

[2] Rogers also alleged that he was retaliated against for filing grievances and complaints against Defendant Williams pertaining to the new legal mail policy, and that Defendant Williams intercepted and/or delayed his incoming legal mail for the purpose of causing harm to his ongoing legal matters. Dkt. No. 58 at 4; Dkt. No. 16 at 33, 35–36.

[3] All quotations of Rogers' filings alter capitalization, as Rogers uses capital letters in most words.

("King County Defendants") moved to dismiss the suit against them in its entirety. Dkt. Nos. 38–39. Judge Peterson issued an R&R concluding that Rogers had adequately stated a claim against King County for having a "custom or policy of substituting vegan/vegetarian and soy meat products for kosher meat products as a part of the King County Jail's kosher diet menu [that] violates [Rogers'] First Amendment rights and RLUIPA" and against Defendant Norman for a "religious diet claim[.]" Dkt. No. 58 at 20. She concluded that Rogers had not stated a claim against King County for a "policy of providing him re-packaged, religiously contaminated and spoiled meat, and other non-kosher products" in violation of his constitutional rights, or against Defendants Shepherd-Moses, Curtis, Nance, Bacon, and Taylor "as to his religious diet." *Id.*

Judge Peterson also concluded that Rogers had stated a claim against King County as to its "legal mail policy" violating his First and Sixth Amendment rights and against Defendant Williams for the "legal mail policy claim[.]" *Id.* However, she concluded that he failed to state a claim against Defendants Nance, Vernon, and Robbins as to his legal mail policy claims. *Id.* at 21. Finally, Judge Peterson concluded that Rogers' "access to courts claim" failed "in its entirety," and all other "miscellaneous claims" also failed to state a claim. *Id.*

Rogers filed objections to the R&R, Dkt. No. 62, to which King County Defendants responded, Dkt. No. 63.[4]

## II. DISCUSSION

### A. Legal Standard

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

[4] King County Defendants repeatedly refer to Magistrate Judge Peterson as "the Magistrate" in their brief. Congress adopted the title of "United States Magistrate Judge" several decades ago. Federal Courts Study Implementation Act of 1990, Pub. L. No. 101-650, § 321 (1990). Future filings should use the appropriate title: Magistrate Judge.

U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). As the statute and rule suggest, the Court reviews findings and recommendations "*if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *see also id.* ("Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct."). To perform a de novo "review of findings and recommendations to which no one objects would . . . defeat the whole purpose of referring the [matter] to the magistrate judge." *Id.* at 1122. Rather, "when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72, Advisory Comm. Notes (1983) (*citing Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974)). However, the Court retains discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" regardless of whether any objections are received. 28 U.S.C. § 636(b)(1); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985). Here, the Court exercises its discretion to perform de novo review of each category of claims that is subject to an objection.

**B. Objection to Recommendation Regarding RLUIPA and Free Exercise Claims**

Rogers objects to Judge Peterson's recommendation to dismiss his claims under RLUIPA and the Free Exercise Clause regarding King County's "policy of providing re-package[d], contaminated and spoiled meat and other-non-kosher products." Dkt. No. 62 at 2. Judge Peterson recommended dismissal of this claim because "the facts alleged in [Rogers'] amended pleading with respect to these issues are vague and confusing, and therefore insufficient to adequately state a viable *Monell* [*v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)] claim against King County in relation to this purported policy." Dkt. No. 58 at 11. In response, Rogers asserts he is a "layman" and "courts are required to analyze pro se litigant[s'] complaint(s) to a less

stringent standard than formal pleadings by lawyers." Dkt. No. 62 at 3 (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

King County Defendants urge the Court to overrule Rogers' objections because he "fails to raise specific objections under Fed. R. Civ. P. 72, repeats previously raised arguments, and improperly attempts to introduce new evidence." Dkt. No. 63 at 2–3.

1. The Court Dismisses All RLUIPA Claims Against King County Defendants in their Individual Capacities

Rogers sues "each defendant in both individual and official capacities." Dkt. No. 16 at 7. With respect to his Free Exercise and RLUIPA claims, he seeks compensatory damages of $600,000 "jointly and severally against defendants" and $750,000 in punitive damages against each individual Defendant listed in those claims. Dkt. No. 16 at 52.

Rogers does not have a federal RLUIPA cause of action against King County Defendants in their individual capacities. As the Supreme Court recently held,

> Under the Spending Clause, Congress lacks regulatory authority to impose liability on [prison officers sued in their individual capacities] directly and must depend instead on consent. And because [such officers] never agreed to answer suits like this one, [a plaintiff's] case cannot proceed against them any more than a breach of contract action might proceed against a defendant who never formed a contract.

*Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931, 1942 (2026). The Court accordingly dismisses Rogers' RLUIPA claims against King County Defendants in their individual capacities.

2. The Court Dismisses Rogers' Request for Injunctive Relief Against Defendants at KCCF or Maleng Relating to his RLUIPA and Free Exercise Claims

Although Rogers seeks injunctive relief ordering Defendants named in Count 1 to provide him "with the correct / proper religious kosher dietary meals," Dkt. No. 16 at 49, that request is moot as to Defendants at KCCF or Maleng because he was transferred to Airway Heights and there is nothing in the record suggesting a "reasonable expectation" nor "demonstrated probability" that

Rogers will again return to KCCF or Maleng. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986).

3. RLUIPA Claim and Free Exercise Clause *Monell* Claim

The Court next turns to Rogers' RLUIPA and Free Exercise claims against King County.[5]

To establish liability under Section 1983, "a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (quoting *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011)). A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). That is, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Instead, to state a *Monell* claim against a municipality under Section 1983, a plaintiff must demonstrate that an "official policy, custom, or pattern" of the government entity was "the actionable cause of the claimed injury." *Tsao*, 698 F.3d at 1143 (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022, 1026 (9th Cir. 2008)). "In particular, municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Williams v. City of Sparks*, 112 F.4th 635, 646 (9th Cir. 2024) (quoting *Horton ex rel. Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019)). "A plaintiff must show deliberate action attributable to the municipality that directly caused a deprivation of federal rights." *Id.* (citation modified).

[5] As noted by Judge Peterson, "the real party in interest in an official-capacity suit is the governmental entity and not the named official[.]" *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also* Dkt. No. 58 at 9 n.7.

The Free Exercise Clause of the First Amendment, as made applicable to the states by the Fourteenth Amendment, forbids government from "prohibiting the free exercise" of religion. U.S. Const. amend. I. Prisoners retain their religious freedom while incarcerated, subject to limitations "aris[ing] both from the fact of incarceration and from valid penological objectives." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *see also Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015). An inmate asserting a Free Exercise or RLUIPA claim must show that he has a sincerely held religious belief that was substantially burdened by government action. *Long v. Sugai*, 91 F.4th 1331, 1337 (9th Cir. 2024); *Fuqua v. Raak*, 120 F.4th 1346, 1352–53 (9th Cir. 2024).

Here, Rogers alleges that he "sincerely believes that he must obey and adhere to Yahweh laws and . . . keep to a kosher diet," and asserts that "the dietary laws of House of Yahweh are consistent with dietary laws of those of the Jewish faith dietary laws." Dkt. No. 16 at 12. Rogers alleges that King County has "a custom or policy that consists of Rogers being served a pre-planned vegan/vegetarian and soy-meat menu, in substitution of kosher meat, fish and poultry" on "House of Yahweh sabbath days and religious holidays." *Id.* at 21–22. Specifically, he avers that the kosher meals that were served to him "were the same as the standard dietary meals," except he is always served "a vegan/vegetarian patty as a substitution for kosher meat, fish or poultry." *Id.* at 13. According to Rogers, this substantially burdens his religious because he "must . . . consume kosher meat, fish and poultry to receive salvation and Yahweh blessings." *id.* at 15.

However, Rogers elsewhere alleges that he *does* receive meat on the kosher diet. *Id.* at 14 (the "lunch entrée consists of two thin slices of a unknown meat product"). Indeed, the KCCF kosher menu—of which Rogers requests the Court take judicial notice, Dkt. No. 54 at 4—shows that various meat products are provided: in one week, a kosher salami sandwich was provided on Wednesday and kosher bologna sandwiches were provided on Monday, Friday, and Saturday, and

the following week, a kosher salami sandwich was provided on Wednesday, kosher bologna sandwiches were provided on Monday and Saturday, and a kosher turkey sandwich was provided on Friday, *id.* at 14–15. Thus, the menu Rogers submitted shows that not only is he provided kosher meat as part of his diet, such meat is provided on Saturdays (sabbath days). *Id.* The Court "will not accept as true pleading allegations that are contradicted by . . . other allegations," 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1363 (3d ed. April 2026 Update), and here, Rogers' allegation that King County has a custom or policy of providing only vegan/vegetarian meals on sabbath days is undermined by his other allegations and by the menu he submitted for judicial notice. As King County Defendants argue, Rogers' claims largely "appear[] to be directed to a complaint against vegetarian and vegan substitutions" rather than the lack of a kosher diet. Dkt. No. 38 at 8–9.

Rogers also complains that he cannot eat the meat he is served because (1) it makes him sick; (2) he can't determine if it is kosher; (3) it can "no longer be certified as kosher once it is unsealed" and (4) KCCF "is not constructed with a type of kosher kitchen, nor persons for preparing raw kosher meat." Dkt. No. 16 at 14. But like his allegation above, the latter three allegations are contradicted by other factual assertions in Rogers' complaint. Specifically, Rogers alleges in his complaint that "*each time* that [he] consumed the [meat provided in his lunches], [he] became sick and notified medical accordingly." *Id.* (emphasis added). In other words, that the meat was unsealed, potentially not kosher, or prepared in a non-kosher kitchen by non-kosher personnel did not stop Rogers from consuming it multiple times. Instead, he ate it on various occasions, uninhibited by his alleged religious beliefs, and the only reason he stopped eating it was because he believed it made him ill. *Id.* Thus, the Court does not accept as true Rogers' allegations that he cannot eat the meat because it was unsealed, potentially not kosher, or prepared in a non-kosher kitchen by non-kosher personnel. *See Herrera v. Cnty. of Los Angeles*, 482 F. App'x 263,

265 (9th Cir. 2012) (finding that district court did not err in dismissing claims that a county had a certain policy because the allegation was "not plausible as this allegation is repeatedly contradicted by other allegations in [the] complaint and the attachments to [the] complaint"). The Court does accept as true Rogers' allegation that he cannot eat the meat because it is spoiled and makes him ill. *See* Dkt. No. 16 at 14 ("the unknown meat product has a white slimmy [sic] substance and appears to be spoiled").

However, Rogers has alleged in another case he is litigating that he believes that his food makes him ill because it is served in an unhygienic manner.[6] In that case, Rogers seeks an injunction requiring the defendants to serve the food at a proper temperature. *Rogers v. Skinner et al.*, No. 2:23-cv-01034-DGE-GJL, Dkt. No. 116 at 53 (July 9, 2024). Thus, to the extent King County has a policy or practice of serving food in a manner that makes him ill, Rogers is already challenging that policy in parallel litigation, and under the doctrine of claim-splitting, plaintiffs "generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) (citation modified).

Rogers also asserts in conclusory fashion that he "receives side food items at breakfast lunch and dinner that are not kosher." Dkt. No. 16 at 14. But he does not explain how they are not

[6] In a complaint filed roughly three months before the one in this case against many of the same defendants, including Nance, the King County Correctional Facility, and King County, Rogers complained that defendants subjected him to "unhealth[y] monotonous dietary meals that posed risk of serious harm to Rogers['] health and pre-existing medical condition" because they were "non-nutritional and served under unsafe and unsanitary conditions[.]" *Rogers v. Skinner et al.*, No. 2:23-cv-01034-DGE-GJL, Dkt. No. 116 at 29 (July 9, 2024). He asserted that when he complained that the two boiled eggs he received as part of his breakfast were hazardous to his health due to the cholesterol content, "food service staff retaliated by swit[ching his] medical diet to a vegan diet." *Id.* at 30. And when he informed staff that he was not vegan, his diet "was switched back to the monotonous egg diet." *Id.* He also alleged that his other meals were often served on dirty trays and "within the foodborne temperature danger zone," causing him to get sick. *Id.* at 31, 33; *see also id.* at 35 (explaining that he was unable to eat main courses "due to bacteria growth causing sickness"). Rogers further alleged that his rights under the Americans with Disabilities Act were violated because he was not given "nutritional food meals" on par with "staff and other detainees" who received "non-medical nutritional food meals." *Id.* at 37. The Court takes judicial notice of the filings in this case.

kosher, nor does he identify how these allegedly non-kosher "snacks, condiments and deserts," *id.* at 21, substantially burden his religious beliefs.

What remains is Rogers' claim that King County has "a custom or policy that consists of Rogers being served a pre-planned vegan/vegetarian and soy-meat menu, in substitution of kosher meat, fish and poultry" on "religious holidays" in violation of his sincere belief that he must consume kosher meat on such days to "receive salvation and Yahweh blessings." *Id.* at 15–16, 20–22. Rogers complains that the only time he received kosher meat on a holiday was during Passover. *Id.* at 21. The Court adopts Judge Peterson's recommendation that King County's motion be denied as to this claim; at this stage of the litigation, the Court accepts this allegation as true, as it is not contradicted by other allegations in Rogers' complaint.[7]

**C. Objection to Recommended Dismissal of "Access to the Courts" Claim**

Rogers objects to the recommended dismissal of his claim for violation of the right of access to the courts because he states that his petition for writ of certiorari to the North Carolina Court of Appeals "was later dismissed for unreasonable delay due to King County Defendants['] no photocopy policy." *Id.* (citation modified). Rogers attaches to his objections a notice from the North Carolina Court of Appeals dated May 5, 2025, in which the court dismisses his claims "with prejudice due to unreasonable delay." *Id.* at 6.

King County Defendants raise two arguments in response. First, they argue that the notice of dismissal was in Rogers' possession when he first responded to their motion to dismiss. Dkt. No. 63 at 3. "Thus, this evidence should have been included in his response, and it is now improperly submitted." *Id.* Second, King County Defendants dispute Rogers' claim that their photocopy policy resulted in the dismissal: "[t]he North Carolina Court of Appeals denied the

[7] The Court reiterates for clarity that this claim *is* dismissed as to the individual King County Defendants for the reasons discussed above, as is Rogers' claim for injunctive relief against Defendants at KCCF or Maleng related to this claim.

petition based on the unreasonable delay in challenging the underlying conviction"; "Rogers' first writ of certiorari did not include the supporting documents, and he was given leave to refile with those documents" by the court, *id.* at 3, which he did, Dkt. No. 39-3. As such, "[t]he new dismissal [by the North Carolina Court of Appeals] added by Plaintiff is not traceable to the challenged photocopy policy." Dkt. No. 63 at 3.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation modified); *see also Schneider v. Cal. Dep't. of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (in ruling on a motion to dismiss, a court "*may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss"). However, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record" without converting a motion to dismiss into one for summary judgment, so long as the fact in question is not subject to reasonable dispute. *Lee*, 250 F.3d at 689. "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citation modified). The Court agrees with Judge Peterson that the North Carolina court records are properly subject to judicial notice. Dkt. No. 58 at 8.

As King County Defendants point out, the North Carolina Court of Appeals notified Rogers it was dismissing his case with prejudice on May 5, 2025, Dkt. No. 62 at 6, more than two months before Rogers responded to King County Defendants' motion to dismiss, Dkt. No. 63 at 3. As such, Rogers had ample opportunity to place the dismissal in the record before Judge Peterson's review of the motion. Even if the Court were to consider the notice of dismissal, it agrees with King County Defendants that Rogers' objection should nevertheless be overruled.

As Judge Peterson explained, "[d]ocuments submitted by Defendants in conjunction with their motion to dismiss show that [Rogers'] original petition was dismissed without prejudice to his right to re-file the petition with 'sufficient supporting documents,' and that [Rogers] did, in fact, re-file his petition with supporting documents in January 2025." Dkt. No. 58 at 17. "As [Rogers] was able to obtain the necessary documentation to re-submit his petition for writ of certiorari, he fails to show any injury related to his North Carolina Court of Appeals case traceable to the challenged photocopy policy." *Id.* Indeed, Rogers submitted documentation to the North Carolina Court of Appeals in January 2025, Dkt. No. 39-3, and the subsequent dismissal of his petition on May 5, 2025 was due to "unreasonable delay" in challenging the underlying petition under North Carolina Rule of Appellate Procedure 21(e), not due to insufficient documentation. Dkt. No. 62 at 6. Therefore, the Court agrees with Judge Peterson that any purported injury is not traceable to the King County legal mail policy. Rogers' objection to the recommended dismissal of his claim regarding obstruction of access to courts is overruled.

**D. Objection to the Recommended Dismissal of Defendants Nance and Curtis**

Rogers objects to the dismissal of all claims against Allen Nance (Director of DAJD) and Gregg Curtis (Corrections Program Administrator for DAJD) Dkt. No. 62 at 4. His objection states, in full, "Plaintiff further objects to dismissal of Nance and Curtis as both were personally involve[d] and have final policy making authority." *Id.* (citation modified). This objection is conclusory and simply restates what Rogers asserted in his complaint. *See* Dkt. No. 16 at 8–24. For an objection to an R&R to meet the Rule 72(b)(2) standard, more is required than "[m]ere incorporation of arguments from the underlying motions, without identifying what portions of the R&R the objecting party considers to be incorrect." *Fulk*, 2025 WL 1156679, at *2 (citation modified).

Despite this lack of specificity, the Court has performed de novo review of the claims against Nance and Curtis. Because Rogers fails to state a RLUIPA or Free Exercise claim, the Court overrules his objections to dismissal of his claims against Nance and Curtis under those laws. Similarly, because Rogers failed to plead a claim regarding access to the courts, the Court overrules his objections to dismissal of that claim against Nance and Curtis. With respect to his legal mail claim, Rogers alleged in his complaint that Nance was aware of the policy, received and forwarded Rogers' complaints regarding it to other officials, and informed Rogers of that fact. Dkt. No. 16 at 31. This Court's independent review reaches the same conclusion as Judge Peterson: "[Rogers'] allegations that Defendant Nance knew of the policy and had been advised by Plaintiff that he believed the policy to be unconstitutional do not, without more, demonstrate that Defendant Nance personally participated in the violation of [Rogers'] constitutional rights." Dkt. No. 58 at 15.

## III. CONCLUSION

For the reasons stated above, the Court ORDERS that Rogers' objections, Dkt. No. 62, are OVERRULED, and the R&R, Dkt. No. 58, is MODIFIED IN PART to grant King County Defendants' motion to dismiss Rogers' RLUIPA and Free Exercise claims against them with the exception of Rogers' claim against King County for its alleged custom or policy of not serving kosher meat on most religious holidays, Dkt. No. 38 at 8–9, 12–15, and is ADOPTED IN PART with respect to all other recommendations (i.e., King County Defendants' motion to dismiss is DENIED as to Rogers' legal mail policy claim against Defendant Williams and as to his claims that King County's custom or policy of not serving kosher meat on most religious holidays violates RLUIPA and the Free Exercise Clause and that King County's legal mail policy violates his First and Sixth Amendment rights; and the motion is GRANTED as to (1) Rogers' legal mail policy

claims against Defendants Nance, Vernon, and Robbins; (2) his access to courts claim; and (3) all miscellaneous claims asserted against Defendants in Rogers' amended complaint).

The Clerk is directed to send copies of this Order to Plaintiff, to counsel for Defendants, and to Judge Peterson.

Dated this 24th day of August, 2026.

Lauren King
United States District Judge